UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

LOUIS ARAMBULA, et al,                    )
                                          )
          Plaintiff,                      )
                                          )
               v.                         )     Case No. 1:11-CV-429 JD
                                          )
KARL SCHMIDT UNISIA, INC. ZOLLNER         )
DIVISION HOURLY PENSION PLAN, et al,      )
                                          )
          Defendants.                     )

## OPINION AND ORDER

Now before the Court are cross motions for summary judgment in this action to recover

supplemental pension benefits by former employees of Karl Schmidt Unisia, Inc. [DE 24, 26].

Both motions are fully briefed [DE 25, 27, 28, 30, 33–36], and the parties have stipulated to the

authenticity of all exhibits [DE 29]. Plaintiffs have also filed a motion for oral argument on the

motions [DE 37]. For the following reasons, Defendants' motion for summary judgment is

GRANTED as to all plaintiffs except for Lane Woods, as to whom the motion is DENIED.

Conversely, Plaintiffs' motion is GRANTED only as to Lane Woods, and is DENIED as to all

other plaintiffs.

### I. Factual Background

Defendant Karl Schmidt Unisia, Inc. manufactures automotive parts. [DE 1-1 p. 89]. Karl

Schmidt Unisia operated a plant in Fort Wayne, Indiana, where it manufactured automotive

pistons. [*Id.*; DE 10 ¶ 6]. Each of the Plaintiffs worked for Karl Schmidt Unisia at the Fort

Wayne plant, and were represented by the International Union, United Automobile, Aerospace

and Agricultural Implement Workers of America and its Local 2357 (the "Union"). [DE 10 ¶¶ 3,

4, 7]. Karl Schmidt Unisia and the Union entered into collective bargaining agreements that

governed the employment relationship between the company and the Plaintiffs, including their wages, benefits, hours, and other terms and conditions of employment. [DE 10 p. 7]. The company also maintained a pension plan entitled Karl Schmidt Unisia, Inc. Zollner Division Hourly Pension Plan (the "Plan"), which is also a defendant in this action. [DE 10 ¶ 4]. The Plan is an employee pension benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and was also the subject of collective bargaining negotiations. [DE 10 ¶¶ 4, 5].

The twelve plaintiffs in this matter were each long-time employees of Karl Schmidt Unisia and its predecessor at the Fort Wayne plant. [DE 10 ¶¶ 3, 14]. They were also all members of the Union and participants in the Plan. [DE 10 ¶ 4]. In April 2007, however, Karl Schmidt Unisia issued a WARN Act notice that it would be laying off employees at the Fort Wayne plant due to the loss of a substantial portion of its business, and mass layoffs began in the summer of 2007. [DE 1-1 pp. 90, 91]. The plant eventually closed, and Karl Schmidt Unisia sold the plant on December 29, 2009. [DE 1-1 p. 91, 10 ¶ 13]. This led to a dispute between certain employees and the company, of which the present action is a subset, as to which pension benefits the employees qualified for under the collective bargaining agreement and/or the Plan. [DE 1-1 p. 85].

Under the terms of the collective bargaining agreement and the Plan, employees could qualify for various retirement benefits depending on their age and number of years of service. [DE 1-1 pp. 23–36, 74]. All participants in the Plan could receive "Normal" retirement benefits upon reaching the age of 65. [DE 1-1 pp. 17, 26]. Additionally, employees who had over thirty years of service or who were at least sixty years old and had at least ten years of service could take "Early Retirement" and receive specified pension benefits at that time. [DE 1-1 pp. 29, 30].

Employees could also qualify for an additional benefit, referred to as a "Thirty and Out" benefit under the collective bargaining agreement and "Supplemental Pension Benefits" under the Plan, which would supplement their base pension so as to bring their total pension benefit to $1,500 per month from the time they retired until they became eligible for social security benefits. [DE 1-1 pp. 35, 74]. These benefits were the source of the parties' dispute, which specifically centered around whether employees could qualify for this benefit if they only reached the age thresholds after they were laid off. [DE 1-1 p. 85]. The Plaintiffs cited both the collective bargaining agreement and the Plan as sources of their entitlement to these benefits. The collective bargaining agreement in place at the time contained the following provision:

Section 13.01. Pension Plan. The Karl Schmidt Unisia, Zollner Division, Inc. Pension Plan, as amended by these negotiations shall continue in effect for all employees who are vested in the plan and/or were hired prior to 7-1-02 for the term of this agreement. The plan has been amended as follows:

30 and out:      $1,500 per month

The "Thirty and Out" provision of the Pension Plan applies only to those employee [*sic*] who have reached:

Age 58 and 30 years of service or;
Age 57 and 32 years of service or;
Age 56 and 35 years of service.

[DE 1-1 p. 74].

The Plan, as written at the time of Plaintiffs' claims, contained the following companion provision to the collective bargaining agreement:

Section 5.03. Upon written application of the Member, a Member who has either (i) completed thirty (30) years of Service and Credited Service and attainted age fifty eight (58) as of his date of termination of employment, or (ii) completed thirty two (32) years of Service and Credited Service and attained age fifty seven (57) as of his date of termination of employment or (iii) completed thirty five (35) years of Service and Credited Service and attained age fifty six (56) as of his date of termination of employment, shall be retired as of a Supplemental Retirement Date. The Member shall receive an immediate Supplemental Pension Benefit, determined as provided below.

[DE 1-1 p. 34]. An eligible employee's "Supplemental Retirement Date" was defined as "the first day of the month coincident with or immediately following the date the Member elects to retire." [DE 1-1 p. 19]. Plaintiffs deny, however, that the clause requiring that a Member reach the designated age "as of his date of termination of employment" was validly added to the Plan. The prior version of the Plan defined the age requirement "as of [the Member's] *retirement date*." [DE 1-1 p. 77 (emphasis added)]. Prior to the amendment that altered this language, an employee could only qualify for the Supplemental Benefits if they had completed thirty years of service and were at least fifty-eight years old. [DE 1-1 p. 77]. The Plan was amended in 2005 to add two additional years of service/age combinations by which an employee could qualify for these benefits, as agreed to through the collective bargaining process, but that amendment also substituted the clause "as of his date of termination of employment" in place of "as of his retirement date." [DE 25-4 p. 16]. Plaintiffs deny that this change in terminology was authorized by the collective bargaining negotiations. [DE 25-4 ¶¶ 13, 19].

Karl Schmidt Unisia took the position under both the collective bargaining agreement and the Plan that employees could not continue to age into the supplemental benefits after they went on layoff status. [DE 1-1 pp. 95, 96]. Since it became apparent when layoffs began in 2007 that many employees who had already met the years of service requirement would only meet the age threshold after they were laid off, the Union filed a grievance to contest this position, and the parties ultimately submitted the dispute to arbitration. [DE 10 ¶¶ 11, 12]. The arbitrator strictly limited his decision to the parties' rights under the collective bargaining agreement, as he held that he did not possess the authority to interpret the Plan. [DE 1-1 p. 99]. He concluded that employees could continue to age into the supplemental benefits while they were on layoff status, so long as they retained their seniority under the collective bargaining agreement, but that

employees could not continue to age into the benefits after Karl Schmidt Unisia sold the plant, at which time the collective bargaining relationship terminated. [DE 1-1 p. 106].

Thus, all employees who had reached the years in service requirements and who attained the age requirements after they were laid off but before December 29, 2009, qualified for the supplemental benefits. [DE 1-1 p. 106–07]. Karl Schmidt Unisia accordingly paid those benefits to all such employees, with the exception of Lane Woods. [DE 25-4 ¶ 31]. The remaining eleven plaintiffs are all employees who met the years of service requirements but who only reached the age threshold after December 28, 2009. [DE 10 ¶ 15]. Each of the plaintiffs also filed a claim for Supplemental Benefits with the Plan, and subsequently filed appeals to the denials of their claims. [DE 10 ¶¶ 14–16]. Following the denial of those appeals by the Plan administrator, Plaintiffs commenced the instant action seeking review of the administrator's decision pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B) [DE 1 ¶¶ 16, 22, 23]. Mr. Woods also seeks enforcement of the arbitrator's decision as to his claim for benefits under the collective bargaining agreement pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") [DE 1 ¶¶ 18–20]. All parties have now moved for summary judgment as to all claims.

## II. Summary Judgment Standard of Review

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Kerri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with

respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. On the other hand, where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences in its favor. *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Finally, the fact that the parties have cross-filed for summary judgment does not change the standard of review. *M.O. v. Ind. Dep't of Educ.*, 635 F.Supp.2d 847, 850 (N.D. Ind. 2009). Cross-motions are treated separately under the standards applicable to each. *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008).

### III. Discussion

Plaintiffs complaint includes two counts. Count I asserts a violation of the Labor Management Relations Act based on the parties' collective bargaining agreement, and Count II asserts a violation of ERISA for denial of Plaintiffs' claims for benefits under the Plan. Though Count I is perhaps somewhat inartfully plead, the Court construes it as containing two separate claims. The first is a claim by Mr. Woods against Karl Schmidt Unisia, Inc., seeking to enforce

the arbitration decision so as to receive his "Thirty and Out" benefits under the terms of the collective bargaining agreement. The second claim is a predicate to Plaintiffs' ERISA claim under Count II. The claim asserts that the company violated the collective bargaining agreement, and therefore the Labor Management Relations act, by amending the Plan without authorization, and that as a result, the Court should equitably reform the Plan to accord with the pre-amendment terms. In turn, Count II is a claim by all plaintiffs against the Plan for recovery of Supplemental Benefits per the reformed terms of the Plan.

**A.      Plaintiffs' Claims under the Employee Retirement Income Security Act**

The remedy Plaintiffs seek in this action is recovery of the amounts they would have received under the Plan's Supplemental Benefits. To get there, they proceed in two steps. First, because there is no dispute that the Plaintiffs (with the exception of Mr. Woods) would not be entitled to those benefits under the Plan as written at the time of their claims for benefits, they argue that the Plan's terms had been impermissibly amended. Thus, their first cause of action, under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, asserts that the amendment violated the parties' Collective Bargaining Agreement and essentially asks the Court to equitably reform the language of the Plan to conform with the pre-amendment terms. Second, Plaintiffs argue that under these pre-amendment terms, they would have been entitled to receive the Supplemental Benefits, so their second cause of action, arising under ERISA, 29 U.S.C. § 1132(a)(1)(B), seeks recovery of those benefits. However, because the Court determines that the amendment to the Plan does not actually affect the outcome of the ERISA claim, it addresses the ERISA claim first.

The first question in analyzing the ERISA claim is what standard of review applies to the plan administrator's denial of Plaintiffs' benefits. "Judicial review of an ERISA administrator's

benefits determination is de novo unless the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010). However, where an ERISA plan vests such discretion in the administrator, "the court applies a more deferential standard, seeking to determine only whether the administrator's decision was 'arbitrary and capricious.'" *Id.* (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 860–61 (7th Cir. 2009)). Though review under this deferential standard does not turn a court into a "rubber stamp," *id.*, a plan administrator's interpretation will only be overturned when it is "unreasonable, and not merely incorrect," *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000); *Edwards v. Briggs & Stratton Retirement Plant*, 639 F.3d 355, 360 (7th Cir. 2011) ("Put simply, an administrator's decision will not be overturned unless it is downright unreasonable.") (internal citations omitted). Thus, an administrator's decision will be upheld "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Edwards*, 639 F.3d at 360 (internal citations omitted).

There is no dispute here that the Plan expressly vests such discretionary authority in the Plan Administrator, which is Karl Schmidt Unisia, Inc. [Plan § 8.02(e), DE 1-1 p. 47 ("[T]he Administrator shall . . . have the discretionary authority to determine all claims filed pursuant to . . . this Plan and shall have the authority to determine issues of fact relating to such claim); § 8.01(a), DE 1-1 p. 44–45 (stating that the Retirement Committee, which decides appeals of benefits determinations, "shall have the full and exclusive discretionary authority to determine

all questions arising in the administration, application and interpretation of the plan including the authority to correct any defect or reconcile any inconsistency or ambiguity in the Plan and the authority to determine a Member's . . . eligibility to receive a benefit from the Plan.")]. Plaintiffs argue, however, that because there is a dispute as to what the Plan language actually is, review of the administrator's decision should be de novo.

An administrator's discretion extends to construing the terms of the plan, but not to deciding questions of law. *Wetzler v. Ill. CPA Soc'y & Found. Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009) ("An issue as to whether a certain term as construed violates ERISA is a question of law and as such, reviewed de novo."). The question of whether the amendment to the Plan violated the Collective Bargaining Agreement is solely a question of law under the LMRA, and the Court therefore considers that question de novo. However, that does not deprive the administrator of the discretion vested in it to construe the terms of the Plan. While an administrator's decision would be overturned as unreasonable if it bases its interpretation on the wrong plan, *see Huss v. IBM Medical & Dental Plan*, 418 F. App'x 498, 504 (7th Cir. 2011) (holding that an administrator "acted in an arbitrary and capricious manner by failing to consider the relevant document in her decision" where she based her decision on the wrong version of the plan) (citing *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (noting that administrators' decisions must be based on a reasonable explanation of *relevant* plan documents in order to be upheld)), the administrator's decision will be affirmed if it has interpreted the terms that the Court concludes as a matter of law make up the Plan, if its interpretation of those terms is reasonable, *see Wetzler*, 586 F.3d at 1057–58 (reviewing an administrator's interpretations of pre- and post-amendment provisions deferentially before analyzing as a matter of law whether the amendment improperly decreased benefits).

1. **The Administrator Reasonably Interpreted the Plan under Either Construction of its Terms**

Applying that standard of review here, Plaintiffs' argument as to which terms make up the Plan becomes inconsequential because the record reflects that the administrator addressed both versions of the Plan, and its interpretation of both versions of the provisions at issue was reasonable. As to the version of the Plan as written at the time of the denial of Plaintiffs' Supplemental Benefits, there is no dispute that the administrator's interpretation was reasonable. The Plan required employees to have met the age thresholds "as of the date of the termination of their employment," [DE 1-1 p. 35], so the administrator was reasonable in interpreting this as meaning that an employee would not qualify if they met the required age and "retired" only after their employment was terminated.

As to the pre-amendment language, for which Plaintiffs advocate, the record reflects that the administrator *did* address and construe that language, and the Court finds that the administrator's interpretation of that language was reasonable and not arbitrary or capricious. The letters from the administrator denying Plaintiffs' claims stated:

> In your claim, you state that the change in the wording of Sections 5.03 (Supplemental Pension Benefit) and 2.39 (Supplemental Retirement Date) of the 2001 Plan document, as amended July 1, 2002, which required that a participant meet the age and service requirements "as of his retirement date" in order to be entitled to a Supplemental Pension Benefit and the equivalent Sections 5.03 and 2.42 of the 2006 Plan document, which require that a participant meet the age and service requirements "as of his date of termination of employment", constitute a violation of (1) the collective bargaining agreement between the Company and UAW Local 2357 (the "union"), and (2) Section 204(g) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

> First of all, the Retirement Plans Committee (the "Committee") does not believe that the change in wording made a substantive change to the Plan. It has always been the Committee's understanding since the age requirement was added on July 1, 2002, that a participant had to have satisfied both the age and service requirement prior to termination of employment in order to be eligible for a Supplemental Pension Benefit. The Plan has always been administered in this manner. For example, no one has ever been allowed to receive an Early

Retirement Benefit (Plan Section 4.05) unless they met both the age and service requirements (age 60 and 10 years of service) prior to termination of employment. When the age requirement was first added to Plan Section 5.03 effective July 1, 2002, the Union advised its members that they had to be age 58 with 30 years of service when they terminated employment in order to be eligible for this benefit.

[DE 1-1 p. 110; 28-1 p. 9].[1] In other words, the administrator is interpreting the pre-amendment language of the Plan as advanced by Plaintiffs, as is its province, and construing it as having the same meaning as the amended language. Plaintiffs' argument that the administrator's decision must be reviewed de novo and reversed because it did not interpret the correct language is thus unsupported by the record. The administrator is therefore entitled to deference as to its interpretation of this language.

The Court must therefore determine whether the administrator was reasonable or acted arbitrarily and capriciously in interpreting the pre-amendment Plan as requiring employees to have met the age threshold prior to the termination of their employment in order to qualify for the Supplemental Benefit. The pertinent pre-amendment provisions stated as follows:

> **Section 2.39**. The term "Supplemental Retirement Date" shall mean, in the case of a Member (i) who has completed at least thirty (30) years of Service and Credited Service, (ii) who has attained age fifty-eight (58) *as of his retirement date*, (iii) who retired on or after July 1, 2002, and (iv) who elected to receive Supplemental Pension benefits in accordance with Section 4.08 of the Restated Plan or Article V of this Plan, the first day of the month coincident with or immediately following the date the Member elects to retire, but in no event prior to April 1, 1974, or later than the Member's Normal Retirement Date.

---

[1] The only decision letters that are actually in the record—in this action to review the administrator's decisions—are those of Mr. Arambula and Mr. Woods. The parties have both argued, however, that each of the Plaintiffs' letters was substantially the same, so the Court considers the parties to have conceded for these purposes that all of the letters included this language. [DE 1 ¶ 16 ("A copy of the denial letter sent to Plaintiff Arambula is attached hereto as Exhibit E. The other Plaintiffs received a denial letter containing the same terms."); 27 p. 12 ("[The Plan's] denial of plaintiff Arambula's appeal via a letter dated November 4, 2011 (Exhibit E), is typical of the denials on appeal of all plaintiffs except plaintiff Woods (his November 4, 2011 letter (Exhibit 4) is identical to Exhibit E except for one omitted sentence in the second paragraph).").].

**Section 5.03**. Upon the written application of the Member, a Member who has attained age fifty-eight (58) *as of his retirement date* and completed at least thirty (30) years of Service and Credited Service shall be retired as of a Supplemental Retirement Date. The Member shall receive an immediate Supplemental Pension Benefit, determined as provided below.

[DE 1-1 pp. 77, 82 (emphasis added)].[2] Defendants defend the reasonableness of the administrator's interpretation by appealing to the common meaning of "retire," arguing that as commonly understood, an employee must have some sort of active employment in order to retire from it. *See OxfordDictionaries.com*, http://english.oxforddictionaries.com/definition/retire (last visited October 4, 2013) (defining "retire" as to "leave one's job and cease to work, typically upon reaching the normal age for leaving employment"); *TheFreeDictionary.com*, http://www.thefreedictionary.com/retire (last visited October 4, 2013) (defining "retire" as "To withdraw from one's occupation, business, or office; stop working"). Because an employee has nothing left to retire from once their employment has been terminated, the latest possible date that can be considered their "retirement date" is the date their employment ends, they argue.

Plaintiffs first respond by arguing that "there is nothing in the Plan that prohibits a Member from qualifying for the supplemental benefit if he has attained the required age 'as of his retirement date,'" which they assume for these purposes can come after the date their employment has been terminated [DE 36 p. 6]. That may be so, but the question is not whether the administrator *must* have arrived at the conclusion it did, but merely whether it was reasonable in doing so. This argument is therefore inconsequential to whether the administrator would have

---

[2] Other changes were also made at the time of the contested amendment, adding additional years of service and age combinations that qualify for the benefits, which Plaintiffs do not contest. Plaintiffs argue that the "as of his retirement date" qualifier would have applied to each of those age/service combinations rather than "as of his date of termination of employment," which appears in the amended version, so the question remains whether it is reasonable to conclude that a "retirement date" cannot occur after an employee's "date of termination of employment."

been reasonable in interpreting the provision that way unless something in the Plan contradicts this interpretation and makes it unreasonable.

As to that issue, Plaintiffs cite the definition of "Early Retirement Date" as evidence that the Plan distinguishes between an employee's retirement date and the termination of their employment. The Plan defines an employee's "Early Retirement Date" based on "*the later of* (a) the date such Member shall leave the employ of the Employer . . . or (b) the date the Member directs in writing shall be his Early Retirement Date." [DE 1-1 p. 13 (emphasis added)]. Noting that an employee's Early Retirement Date could potentially occur later than when they "leave the employ of the Employer," Plaintiffs argue that the Plan contemplates that an employer can "retire" after their employment has been terminated, which would contradict the administrator's interpretation. Plaintiffs' argument falls short, however, because it fails to show that the administrator was unreasonable in declining to apply this alternative method of qualifying for Early Retirement to Supplemental Retirement Dates. An "Early Retirement Date" is one of five categories of retirement dates defined in the Plan, and is the only one that provides this alternative. "Supplemental Retirement Date," in contrast, is based only on "the date the Member elects to retire." [DE 1-1 p. 19]. It would not be unreasonable to suppose that where an Early Retirement Date expressly provides this alternative but a Supplemental Retirement Date does not, the Plan does not intend for this alternative to apply to the Supplemental Retirement Date.

This is further supported by the fact that Supplemental Benefits are specifically tied to the Supplemental Retirement Date and not the Early Retirement Date: "A Supplemental Pension Benefit payable under the terms of this Article *shall only be paid* to a Member who retires on a *Supplemental Retirement Date* . . . ." [DE 1-1 p. 35 (emphasis added)]. Plaintiffs argue around this by trying to equate the Early Retirement and Supplemental Retirement Dates. Anyone who

qualifies for Supplemental Benefits also qualifies for Early Retirement Benefits, and because an Early Retirement Date can be based on the date the member directs in writing as his Early Retirement Date, an employee's Supplemental Retirement Date can be as well, so they argue. This conclusion does not follow, however. Even assuming that all employees who qualify for Supplemental Benefits also qualify for Early Retirement Benefits, that does not mean that all employees who qualify for Early Retirement Benefits must also qualify for Supplemental Benefits. It would be in no way inconsistent for Supplemental Benefits to be more restricted than Early Retirement Benefits even where all employees that qualify for Supplemental Benefits also qualify for Early Retirement Benefits.

Further, the fact that the age threshold contains any qualifier at all supports the administrator's interpretation. The clause states that an employee must have "attained age fifty-eight (58) *as of his retirement date*." Under the interpretation Plaintiffs advance, under which the employee would only need to reach the minimum age by the time they begin receiving benefits, the "as of his retirement date" clause could just as well be omitted entirely. Similarly, the age threshold is measured "as of his retirement date," and not *as of his Supplemental Retirement Date*, indicating that "retirement date" could mean something other than simply the date an employee desires to start receiving the benefits, as Plaintiffs argue, such as the date their employment terminates, as the administrator interpreted it.

On the whole, there is simply no basis for concluding that the administrator acted arbitrarily or capriciously in interpreting the Plan as requiring an employee to reach the relevant age threshold before the termination of their employment (whether by retirement or otherwise) in order to qualify for Supplemental Benefits. To the contrary, the administrator's decision was

based on a reasonable explanation of relevant plan documents, so its interpretation will not be disturbed.

### 2. Plaintiffs' Employment Terminated on December 29, 2009

Plaintiffs next argue that their employment did not actually terminate on December 29, 2009, when the plant at which they worked was sold. Citing the arbitrator's ruling, the administrator stated in the denial letters that "you would have had to . . . have met the applicable age and service requirement of Section 5.03 of the Plan on or before that date [December 28, 2009], in order to be entitled to a Supplemental Pension Benefit." [28-1 p. 9]. December 28, 2009 was the last date the arbitrator held an employee could age into the Supplemental Benefits, given that Karl Schmidt Unisia sold the plant the next day, effectively terminating all employees' employment at the plant. Plaintiffs make only a limited effort to contest this finding. They are correct in arguing that the arbitrator only addressed the employees' rights under the Collective Bargaining Agreement, and did not interpret or rule on their rights under the Plan. However, though they argue that the arbitrator's decision was not binding on the administrator, they cannot suggest that the administrator was arbitrary or capricious for concluding that their employment terminated on December 29, 2009, given the facts that Karl Schmidt Unisia sold the plant at which they worked on that date, and that the arbitrator concluded that the collective bargaining relationship terminated on that date. Therefore, because it is possible to offer a reasoned explanation, based on the evidence, for this particular outcome, the administrator's conclusion as to the date Plaintiffs' employment terminated was not arbitrary or capricious.

### 3. Only Mr. Woods Met the Age and Service Thresholds at the Time of His Retirement

All that is left, then, is to determine whether each of the Plaintiffs met the age and service thresholds at the time of the termination of their employment so as to qualify for the

Supplemental Benefits they seek. All of the Plaintiffs except for Mr. Woods concede that as of December 28, 2009, they had not yet reached the applicable age minimums for the Supplemental Benefits. [DE 1 ¶¶ 14, 15]. Accordingly, they did not qualify for the Supplemental Benefits under the Plan, and the administrator's denial of their claims was not arbitrary or capricious. Their claims under ERISA must therefore be denied.

The parties agree, however, that Mr. Woods in fact met both the age and service requirements at the time his employment was terminated. [DE 10 ¶ 14]. Upon reaching the age threshold to qualify for Supplemental Benefits, Mr. Woods submitted his retirement papers on December 17, 2009. Pursuant to the Plan, a Member's Supplemental Retirement Date is "the first day of the month coincident with or immediately following the date the Member elects to retire." [DE 1-1 p. 19]. In Mr. Woods' case, that would be January 1, 2010. Thus, even though Defendants admit that Mr. Woods met both the age and service thresholds in order to qualify for Supplemental Benefits, they denied his claim based on the fact that his Supplemental Retirement Date would not have been until after Karl Schmidt Unisia sold its Fort Wayne plant.

However, Defendants draw no connection whatsoever between this event and its supposed significance to Mr. Woods' entitlement to the benefits for which he was eligible under the Plan. Defendants do not cite any provision in the Plan that attributes any meaning to the fact that the plant was sold between the time Mr. Woods submitted his retirement papers and the date his benefits would have begun. Defendants instead resort to a strained interpretation of the arbitration decision to justify this position. The holding of the arbitration was that employees who met both the age and service requirements for Supplemental Benefits as of December 29, 2009, the day the plant was sold, were entitled to the Supplemental Benefits under the collective bargaining agreement, even if they only reached the age requirement while they were on "layoff"

status. The arbitrator based its conclusion that the employees' employment was terminated on December 29, 2009 on the fact that the plant was sold that day, which the arbitrator interpreted as resulting in the termination of the collective bargaining relationship. Because the collective bargaining relationship had terminated by the date when Mr. Woods would have begun to receive his Supplemental Benefits, Defendants argue, he is not entitled to receive them.

This line of reasoning strays far enough away from the plain language of the Plan as to easily justify the conclusion that this position is arbitrary, capricious, and "downright unreasonable." Mr. Woods met the only two requirements in the Plan to be eligible for the Supplemental Benefits prior to his retirement. In denying his claim, Defendants essentially try to graft an additional eligibility requirement into the Plan, requiring that the collective bargaining agreement also be in effect on the Supplemental Retirement Date when the employee begins to receive his benefits. The Plan states that any member that meets the eligibility requirements— age and years of service—"*shall* be retired as of a Supplemental Retirement Date" and "*shall* receive an immediate Supplemental Pension Benefit." [DE 1-1 p. 35 (emphasis added)]. The Supplemental Retirement Date is the first day of the month "following the date the Member elects to retire." [DE 1-1 p. 19]. There is no provision from which the administrator could have reasonably interpreted a requirement that the plant not be sold or that the collective bargaining relationship not be interrupted between the time the Member has met all the eligibility requirements and taken all of the action required of them, and the time their benefits begin coming due.

Therefore, Defendants cannot show that it is possible to offer a reasoned explanation, based on the evidence, for this particular outcome, that the decision was based on a reasonable explanation of relevant plan documents, or that the administrator based its decision on a

consideration of the relevant factors that encompass the important aspects of the problem. As a result, its decision was arbitrary and capricious, and must be overturned. Mr. Woods is accordingly entitled to receive his Supplemental Benefits under the Plan.

Finally, Plaintiffs requested an award of "unreduced basic benefits under the Pension Plan" in their motion for summary judgment [DE 24]. However, the briefing on the motions focuses exclusively on Supplemental Benefits, as does the complaint. There is also nothing in the record indicating whether Plaintiffs applied for or received "unreduced basic benefits," and the Plaintiffs' appeals to the administrator and the administrator's decision letters only refer to Supplemental Benefits. Therefore, without any evidence in the record or briefing as to this issue, the Court declines to address this request.

**B.      Plaintiffs' Claims under the Labor Management Relations Act**

As previously discussed, Plaintiffs' Labor Management Relations Act count encompasses two separate claims. The claim relating to the allegedly improper amendment of the Plan fails because, as addressed previously, the amendment did not make a substantive change to the Plan or affect any of the Plaintiffs' rights. Additionally, because this was not a substantive change, the Plan expressly authorizes Karl Schmidt Unisia to make such changes. Specifically, the Plan permits the employer to amend the Plan at any time so long as it does not, in pertinent part, "eliminate or reduce an early retirement benefit or eliminate or reduce a subsidy with respect to a Member who satisfies (either before or after the amendment) the preamendment conditions for the subsidy." [DE 1-1 p. 57]. Because the amendment at issue did not reduce or eliminate any benefit or subsidy, the amendment was wholly authorized and was in compliance with the terms negotiated through the collective bargaining process.

As to Mr. Woods' claim to enforce the arbitration award under the collective bargaining agreement, however, he has proven his entitlement to the "Thirty and Out" benefits. The arbitrator held as follows:

> Therefore, laid off employees who did not lose seniority pursuant to Section 6.02 of the collective bargaining agreement and who met the service requirement for "30-and out" under Section 13.01 of the collective bargaining agreement but who only met the age requirement for "30-and-out" under 13.01 of the collective bargaining agreement while on layoff and who retired only after meeting the age requirement are entitled to receive supplemental benefits pursuant to Section 13.01 of the collective bargaining agreement. The Company violated the collective bargaining agreement by denying supplemental benefits to such laid off employees.

[DE 1-1 p. 106–07]. The arbitrator accordingly ordered that:

> [T]he Company shall commence paying supplemental benefits to retirees under the collective bargaining agreement who were laid off and who met the service requirement for "30-and-out" under Section 13.01 of the collective bargaining [*sic*] prior to layoff but who met the age requirement for "30-and-out" under Section 13.01 [*sic*] the collective bargaining agreement after the layoff and on the date of retirement, whose seniority did not terminate pursuant to Section 6.02 of the collective bargaining agreement, and who retired on or before December 28, 2009.

[DE 1-1 pp. 107–08]. The arbitrator further ordered that all such employees be made whole for any Thirty and Out benefits they should have received already. [DE 101 p. 108].

The Defendants do not contest that Mr. Woods met the applicable years of service requirement and that he retired only after meeting the age requirement, even though he met that requirement while on layoff. [DE 10 ¶ 14]. However, they refused to pay Mr. Woods his supplemental benefits under the arbitration award since under *the Plan's* definition of "Supplemental Retirement Date," Mr. Woods "retired" as of January 1, 2010—the first day of the month following the date he elected to retire—which was after December 28, 2009. As Plaintiffs correctly point out, however, there is no indication that the arbitrator used the term "retire" in the arbitration award according to its definition in the Plan. Rather, his decision was

strictly limited to the collective bargaining agreement, and he expressly disavowed any reliance on or interpretation of the Plan. [DE 1-1 p. 99 ("Thus, this Opinion and Award will be limited to interpreting the collective bargaining agreement."), 103 (refusing to interpret the word "termination" as used in the Plan)]. In doing so, he also expressly rejected the company's argument that the Plaintiffs' entitlement to supplemental benefits was governed only by the Plan. [DE 1-1 p. 99]. Plaintiffs' interpretation of the arbitration decision is further supported by the fact that it references employees who retired "*on* or before December 28, 2009." [DE 1-1 p. 107–08 (emphasis added)]. If the arbitrator was in fact transposing the Plan's retirement date into the collective bargaining agreement, referencing a retirement "on" December 28, 2009 would have been extraneous, as it is only possible to retire as of the first of a month under the Plan. [DE 1-1 p. 18].

The Defendants justify their refusal to pay Mr. Woods these benefits based on their interpretation of the arbitration award as meaning that "after December 29, 2009, when it comes to the CBA, all bets are off." [DE 35 p. 14]. This is not an accurate reading of the decision. The decision based whether employees could continue aging into the supplemental benefits on whether they retained their seniority under the collective bargaining agreement. Thus, the impact of the termination of the collective bargaining relationship was that employees no longer retained their seniority after that time and therefore could not continue aging into the benefits, not that they lost all of their rights under the agreement. In any event, the arbitrator did not hold that the collective bargaining agreement itself terminated on the date of the sale of the plant, just that the employee–employer relationship between the parties ceased since the employees' employment at the Fort Wayne plant would not continue after that date. [DE 1-1 p. 106]. As Defendants

admitted, the term of the collective bargaining agreement itself continued until June 2011, [DE 10 ¶ 7] which was well after Mr. Woods' benefits should have commenced.

In conclusion, Mr. Woods had already aged into the supplemental benefits and met the years of service requirement at the time he retired, so he is entitled to receive the Thirty and Out benefits under the agreement—the same benefits as his Supplemental Benefits under the Plan— pursuant to the arbitration award.

### IV.  Conclusion

For the foregoing reasons, both Plaintiffs' [DE 24] and Defendants' [DE 26] motions for summary judgment are GRANTED in part and DENIED in part. Summary judgment is GRANTED in favor of the Defendants and against each of the Plaintiffs EXCEPT for Lane Woods. However, summary judgment is GRANTED in favor of Lane Woods and against Karl Schmidt Unisia, Inc., as to Count I, and in favor of Lane Woods and against the Karl Schmidt Unisia, Inc. Zollner Division Hourly Pension Plan as to Count II. In addition, the Court ACCEPTS the parties' stipulation as to the authenticity of the exhibits [DE 29]. Finally, since the parties' filings sufficiently addressed the issues raised by the motions and resolved herein, there is no need to have an oral argument, and therefore, the Court DENIES Plaintiffs' Motion for Oral Argument [DE 37].

SO ORDERED.

ENTERED:   October 21, 2013

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court